USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  March 30, 2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

UNITED STATES OF AMERICA; the States
of CALIFORNIA, COLORADO,
CONNECTICUT, DELAWARE, FLORIDA,
GEORGIA, HAWAII, ILLINOIS, INDIANA,
IOWA, LOUISIANA, MASSACHUSETTS,
MICHIGAN, MINNESOTA, MONTANA,
NEVADA, NEW JERSEY, NEW MEXICO,
NEW YORK, NORTH CAROLINA,
OKLAHOMA, RHODE ISLAND,
TENNESSEE, TEXAS, VIRGINIA,
WASHINGTON and WISCONSIN, the
DISTRICT OF COLUMBIA, THE CITY OF
CHICAGO and THE CITY OF NEW YORK *ex
rel.* STEVEN M. CAMBURN,

                    Plaintiffs and Relator,
        -against-

NOVARTIS PHARMACEUTICALS
CORPORATION,

                  Defendant.

----------------------------------------------------------X

       13-CV-3700 (KMW)

       **OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

This matter is before the Court on remand from the Second Circuit Court of Appeals. The Court assumes familiarity with the facts at issue in this litigation.

In its opinion, the Second Circuit held that Camburn stated claims for AKS violations with respect to three types of alleged conduct by Novartis: (1) compensation of physicians for speaking at events with no legitimate attendees, (2) excessive compensation of physicians for speaking events that were canceled, and (3) selecting and retaining physicians as speakers to reward and induce high prescribers ("Speaker Programs"). *United States ex rel. Camburn v.*

1

*Novartis Pharms. Corp.*, 124 F.4th 129, 137 (2d Cir. 2024) ("*Camburn II*").[1] The Second Circuit remanded the case for this Court to determine whether Relator has stated all the elements of an FCA claim premised on these alleged AKS violations. For the reasons stated below, the Court finds that Relator has stated all the elements of an FCA claim, and Novartis's motion to dismiss the Third Amended Complaint is DENIED.

## LEGAL STANDARD

### I.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the plausibility of a plaintiff's claim for relief, a court "must construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor," but "disregard[ing] conclusory allegations, such as 'formulaic recitation[s] of the elements of a cause of action.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–7 (2d Cir. 2021) (quoting *Twombly*, 550 U.S. at 555), *cert. denied sub nom. N.Y. Univ. v. Sacerdote*, 142 S. Ct. 1112 (2022) (mem.). If a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In cases involving fraud, a plaintiff must also comply with Rule 9(b)'s requirement that claims be pled "with particularity." Fed. R. Civ. P. 9(b). Generally, to comply with Rule 9(b), a

---

[1] As used in the TAC and throughout this opinion, the term "Speaker Program" will be used to refer only to the Speaker Programs deemed to have been pled with enough particularity to state an AKS violation by the Second Circuit. The TAC alleges other categories of misconduct that the Second Circuit held were not pled with sufficient particularity and thus did not state a claim. The Court thus limits its opinion to the three categories of Speaker Program conduct that the Second Circuit found to plausibly allege an AKS violation.

complaint "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). Importantly, the "adequacy of particularized allegations under Rule 9(b) is . . . case- and context-specific." *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (internal quotations and citations omitted).

The purposes of these requirements are to: (1) provide the defendant with "fair notice of the relator's claims"; (2) protect the defendant from "improvident charges of wrongdoing"; and (3) discourage "the filing of complaints as a pretext for discovery of unknown wrongs." *Id.* at 86 (citing *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016)); see also *Madonna v. United States*, 878 F.2d 62, 66 (2d Cir. 1989).

## II.    False Claims Act

To allege a violation of the FCA under §§ 3729(a)(1)(A) and (B), a relator must show that a defendant: (1) made a claim; (2) to the United States Government; (3) that is false or fraudulent; (4) knowing of its falsity; and (5) seeking payment from the federal treasury. *Coyne v. Amgen, Inc.*, 717 F. App'x 26, 28 (2d Cir. 2017) (summary order) (quoting *United States ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 113 (2d Cir. 2010), *rev'd on other grounds*, 563 U.S. 401 (2011)); *see* 31 U.S.C. § 3729(a)(1). Claims pled under FCA-analogous state and municipal laws must also be pled in compliance with Rule 9(b). *See United States ex rel. Arnstein v. TEVA Pharms. USA, Inc.*, No. 13-CV-3702, 2016 WL 750720, at *11 (S.D.N.Y. Feb. 22, 2016) (McMahon, J.) (internal citations omitted).

**DISCUSSION**

Novartis asks this court to dismiss the Third Amended Complaint (the "TAC") because Relator provided neither "sufficient identifying information about all of the alleged false claims nor an adequate representative sample of false claims submitted." (Def's Suppl. Mem. of Law in Supp., ECF No. 101 at 11.) Novartis argues that the TAC lacks the detail necessary to identify the false claims at issue, *id.* at 11, and that Exhibit D to the TAC ("Ex. D") is inadequate because it: (1) consists of an arbitrary collection of doctors; and (2) cannot be representative of claims filed during the ten-year life of the alleged scheme." (*Id.* at 13-14.)

For the reasons discussed below, Relator has provided enough identifying information to put Novartis on notice of the claims at issue here. And Ex. D is adequate because (1) all the doctors in the exhibit are alleged to have participated in sham Speaker Programs; and (2) as other courts have held, a sample of an extensive scheme can represent a larger scheme, even if the sample is not drawn from all years of the scheme.

**I.      Relator has Pled a Violation of the FCA with Sufficient Particularity**

Novartis's first criticism is that the TAC lacks the specificity necessary to identify the false claims at issue. But, read together, Relator's TAC and Ex. D set forth a sufficiently specific description of a two-year sample of the claims at issue. Ex. D identifies, for 2013 and 2014, separately, 110 doctors who were Speakers paid by Novartis; identified by his or her initials and NPI number; the total of the tainted payments Novartis made to each; the number of tainted Medicare claims resulting from prescriptions written by each; and the reimbursement Medicare paid on account of those claims. The exhibit shows that in 2013-2014, those doctors received from Novartis a total of $3,632,005.14 in tainted payments, resulting in a total of 13,946 tainted claims being made to Medicare, and resulting in Medicare paying $80,928,944.99. Relator

4

claims that its two-year sample is representative of the ten-year scheme described in its Complaint. (TAC ¶¶ 364, 365.) This information is more than sufficient to put Novartis on notice of the claims that are at issue.

District courts in this circuit have held that when pleading a scheme with numerous transactions over a long period of time, a Relator need not identify the details of each claim, which would be impractical. *United States ex rel. Wood v. Allergan, Inc.*, 246 F. Supp. 3d 772, 788 (S.D.N.Y. 2017), *rev'd and remanded on other grounds*, 899 F.3d 163 (2d Cir. 2018); *U.S. ex rel. Kester v. Novartis Pharms. Corp.*, 23 F. Supp. 3d 242, 250 (S.D.N.Y. 2014) (McMahon, J.) (finding a complaint sufficient under Rule 9(b) even though "[n]o particular claim that a pharmacy submitted for reimbursement is attached as an exhibit or identified in the pleading; rather, the Government's theory is that all claims for [the drugs] submitted by Novartis's co-conspirators during the life of the kickback scheme were 'false.'"); *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 616 (S.D.N.Y. 2013) (Furman, J.) (quoting *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 333 (D. Conn. 2004)).

Instead, a relator can satisfy Rule 9(b)'s pleading requirements by providing enough information for a defendant to "reasonably identify [the] particular claims that are allegedly false[.]" *Kester*, 23 F. Supp. 3d at 256 (ruling that "requiring a plaintiff to provide enough detail for a defendant to be able to reasonably identify particular claims that are allegedly false better fulfills the central purpose of Rule 9(b)—providing fair notice to the defendant") (citing *Rombach v. Chang,* 355 F.3d 164, 171 (2d Cir. 2004)). If a pleading meets those standards, as it does here, a relator may proceed to discovery on the entire fraudulent scheme. *United States ex rel. Tessler v. City of New York,* No. 14-CV-6455, 2016 WL 7335654, at *2 (S.D.N.Y. Dec. 16, 2016) (Furman, J.)

## II.     The Collection of Doctors in Ex. D is a Representative Sample

Novartis asserts that Ex. D is an unrepresentative sample because, in its view, it cannot be "generalized to [a] broader class of claims." (Def's Suppl. Mem. of Law in Supp. at 13 (citing *Wells Fargo,* 972 F.Supp 2d at 616)) (internal quotation marks omitted.) In furtherance of that point, Novartis asserts that Ex. D is arbitrary in two respects. First, Novartis claims that Ex. D is an arbitrary collection of doctors because Relator stated in a footnote that only "57 of the 110 doctors in Exhibit D are alleged elsewhere in the TAC to have participated in sham speaker programs." (Def's Suppl. Mem. of Law in Supp. at 14.) (internal quotation marks omitted)[2] Novartis asserts that Relator has conceded as much. (Def.'s Suppl. Reply, ECF No. 105, at 5.) Second, Novartis claims that Ex. D is arbitrary because it includes only a two-year sample of claims to represent the entire scheme. (Def's Suppl. Mem. of Law in Supp. at 14.) But, for the reasons discussed below, neither of these arguments is persuasive.

### A.     All the Doctors in Ex. D are Alleged to Have Participated in Speaker Programs

Novartis's contention that Ex. D is arbitrary because allegedly only 57 of the doctors in it are accused of having participated in sham Speaker Programs misstates Relator's allegation. The 57 doctors Novartis referenced in footnote 20 of the TAC are simply the doctors who were cited earlier in the TAC as *examples* of those who participated in sham events. All the 110 doctors listed on Ex. D are Speakers who are alleged to have participated in Speaker Programs, not just those who were cited as examples in the footnote. (TAC ¶¶ 354, 355.) Novartis's contention is

---

[2] Footnote 20 was mistaken in citing the number of doctors mentioned in the TAC as 59; the correct number is 57. The parties have used the correct number.

6

likely to have arisen out of an unfortunate ambiguity in the footnote. (TAC ¶ 364, n. 20.)[3]

Novartis claims that the list of doctors in Ex. D may be over-inclusive (*i.e.* it might include doctors who, in fact, participated only in conduct that is no longer at issue in this suit as a result of *Camburn II*). That may well be the case, because Relator prepared Ex. D before *Camburn II*, based on the only information it had: publicly available data identifying some of the doctors who received kickbacks as a result of the scheme described in the TAC. (TAC ¶ 354, n. 19.) The list thus may include information on kickbacks that are no longer a part of this suit.

But a delineation between kickbacks that are still a part of this suit and those that are not is not required at the pleading stage; it will be ascertained in discovery. Relator's only responsibility at this stage of the proceeding is to plead a representative sample of kickbacks that are still a part of this suit, which he has done. *U.S. ex rel. Bilotta v. Novartis Pharms. Corp.*, 50 F. Supp. 3d 497, 523 (S.D.N.Y. 2014) (holding that a relator could plead as false all claims associated with doctors while they were accepting kickbacks and leave to later the determination whether each claim was legitimate, either at summary judgment or trial).

**B.   A Two-Year Sample Can be Representative of the Alleged Scheme.[4]**

Novartis's third criticism is that Ex. D is unrepresentative of a ten-year scheme because it covers only two years of claims. Case law is consistent, however, in holding that a sample can be representative even if it is not drawn from every year of a long-term scheme. *TEVA*, 2016 WL 750720, at *7, 15 (holding that a representative sample is sufficient where relators provided

---

[3] Footnote 20's ambiguity is that it refers to the TAC as having referenced "fifty-nine (59) doctors . . . who participated in sham Speaker Programs and who are identified in Exhibit 'D,'" (TAC ¶ 364 n. 20), without mentioning that those doctors are not the *only* doctors who participated in sham Speaker Programs. In fact, the total number of doctors in Ex. D are alleged to have participated in sham Speaker Programs in 2013-2014. (TAC ¶ 354.)

[4] Although the TAC alleges that the scheme lasted twelve years, the parties have stipulated that the claims period will be limited to approximately ten years.

claims data from only 2010 and 2011 to support a scheme running from 2006 through about 2014); *Kester,* 23 F.Supp. 3d at 259 (describing representative samples as sufficient when "taken from throughout the time period of the scheme" and "representative with respect to substantive content." (citing *Wells Fargo,* 972 F.Supp 2d at 616-17)). Here, the 2013-2014 sample is representative of all ten years of the scheme, because, during those two years, all Speaker Programs were occurring simultaneously: volume-based Speaker selection is alleged to have operated from the launch of the program in 2010, with specific incidents running through at least 2013; events without legitimate attendees are alleged to have occurred from 2011 through 2013; and the cancellation scheme is alleged to have taken place from 2010 through 2013. (TAC ¶¶ 1, 221-25, 236, 314.)

## III.    Relator Has Plausibly Alleged *Scienter* and Materiality

Although the parties do not dispute that these requirements are satisfied here, the Court nevertheless finds that Relator has shown both *scienter* and materiality.

The FCA imposes liability only where an entity acted with "actual knowledge," "deliberate ignorance," or "reckless disregard" of the falsity of a claim. 31 U.S.C. § 3729(b)(1); *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 182 (2016). For liability to be imposed, the claim must also be "material." 31 U.S.C. § 3729(b)(4).

The FCA does not require a specific intent to defraud. Its *scienter* requirement is intended largely to avoid punishing honest mistakes, or ones made as a result of negligence. Relator sufficiently pled the *scienter* element of an FCA claim when he alleged that Novartis knew that its kickbacks violated the AKS by inducing its Speakers to prescribe high volumes of Gilenya. *Wood*, 246 F. Supp. 3d at 828-29. Evidence that Novartis knew that its scheme was causing doctors to prescribe high volumes of Gilenya is the fact that it kept meticulous track of how

many prescriptions its Speakers wrote for Gilenya, and whether its payments to each Speaker produced what Novartis termed a good "Return on Investment". TAC ¶¶ 286, 289, 290, 360.

Materiality is defined as having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. 31 U.S.C. §3729(b)(4). The false claims that resulted from Novartis's scheme were material in that they influenced the payment of money by Medicare.

## IV.      Relator's State and Municipal FCA Claims

The parties have not briefed the question of whether the State and Municipal FCA claims should be held in abeyance, pending resolution of this case, or whether they should proceed along with those in this case. The parties shall set forth their positions in writing no later than April 20, 2026.

### CONCLUSION

For the foregoing reasons, the Court DENIES Novartis' motion to dismiss pursuant to Rules 12(b)(6) and 9(b).

The parties are directed to meet and confer and attempt to agree upon a proposed schedule for discovery, pretrial motions and trial, which shall be presented to the Court no later than April 20, 2026. If the State and Municipal claims proceed along with the federal claims, the Court will hear their counsels' views with respect to scheduling.

**SO ORDERED.**

Dated:  New York, New York
        March 30, 2026                                          _/s/ Kimba M. Wood_
                                                              KIMBA M. WOOD
                                                         United States District Judge